**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF MARYLAND**

| | | |
|---|---|---|
| CHESTER B. HARRIS, JR., # 422-566 | * | |
| Plaintiff | * | |
| v. | * | Civil Action No. PWG-15-1335 |
| SGT. SCHMITT, ARP Coordinator,<br>CARROLL PARRISH, Warden<br>DAYENA CORCORAN, Acting Comm'r | *<br><br>* | |
| Defendants | * | |

*********

**MEMORANDUM OPINION**

On May 8, 2015, Chester B. Harris, Jr., an inmate at the Maryland Correctional Institution in Jessup, Maryland ("MCI-J") filed a Complaint alleging that his "emergency" Administrative Remedy Procedure ("ARP") request was improperly dismissed by Defendant ARP Coordinator Sergeant Sheila Schmitt. ECF No. 1. On June 12, 2015, Harris filed a court-ordered supplement to his Complaint in which he explained that he is a chronic care patient who suffers from asthma, allergies, depression, and anxiety. ECF No. 7. Harris claims that the living conditions at MCI-J, where there are "feces on the walls, ceiling, & feeding slot" and "excessive dust and dirt" and the heat is on in April, amount to "cruel and unusual punishment" and are "not compatible" with his ailments. *Id.* at 3–4. He added Warden Carroll Parrish as a Defendant, claiming that "[t]his issue was brought to the Warden's attention, and he too showed deliberate indifference to the life threatening conditions that [Harris] was forced to endure." *Id.* at 1, 4. Harris filed a second supplement on July 9, 2015, adding Acting Commissioner Dayena Corcoran as a Defendant and claiming that Corcoran denied his request for a "personal fan" to

address the "inadequate" ventilation in his cell. ECF No. 9.[1]

Defendants Sergeant Schmitt, Warden Carroll Parrish, and Assistant Commissioner Dayena Corcoran filed a Motion to Dismiss, or in the Alternative Motion for Summary Judgment, along with a Memorandum in Support and verified exhibits and declarations. ECF Nos. 24, 24-1, 24-3, 24-8. Harris, who is a self-represented litigant, filed an opposition, along with an exhibit. ECF Nos. 30, 30-1. After considering the parties' briefs, exhibits, and applicable law, I find a hearing unnecessary to resolve the issues. *See* Local Rule 105.6 (D. Md. 2016). I will treat Defendants' Motion as one for summary judgment[2] and, because Harris failed to exhaust his administrative remedies or present any claim of constitutional significance, I will grant it.

**Standard of Review**

Summary judgment is proper when the moving party demonstrates, through "particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations . . . , admissions, interrogatory answers, or other materials," that "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a), (c)(1)(A); *see Baldwin v. City of Greensboro,* 714 F.3d 828, 833 (4th Cir. 2013). If the party seeking summary judgment demonstrates that there is no evidence to support the nonmoving party's case, the burden shifts to the nonmoving party to identify evidence that shows that a genuine dispute exists as to material facts. *See Celotex v. Catrett*, 477 U.S. 317 (1986). The existence of only a "scintilla of

[1] The Clerk shall add Dayena Corcoran, Assistant Commissioner to the docket as a defendant.

[2] *See* Fed. R. Civ. P. 12(d) ("If, on a motion under Rule 12(b)(6) or 12(c), matters outside the pleadings are presented to and not excluded by the court, the motion must be treated as one for summary judgment under Rule 56. All parties must be given a reasonable opportunity to present all the material that is pertinent to the motion."). The parties attached exhibits to their briefs. ECF Nos. 24-3 – 24-8, 30-1.

evidence" is not enough to defeat a motion for summary judgment. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251–52 (1986). Instead, the evidentiary materials submitted must show facts from which the finder of fact reasonably could find for the party opposing summary judgment. *Id*. "In ruling on a motion for summary judgment, this Court reviews the facts and all reasonable inferences in the light most favorable to the nonmoving party." *Downing v. Balt. City Bd. of Sch. Comm'rs*, No. RDB-12-1047, 2015 WL 1186430, at *1 (D. Md. Mar. 13, 2015) (citing *Scott v. Harris*, 550 U.S. 372, 378 (2007)).

**<u>Factual and Procedural Background</u>**

Harris' claims are premised on ARPs he filed complaining about the conditions of his confinement. Defendants provided the following verified information in support of their dispositive motion.

**A. First ARP**

Harris filed an ARP, labeled as an "emergency" request, dated April 5, 2015 ("First ARP"), complaining that there were "feces on the ceiling, excessive dirt & dust all over the cell," and that "the heat [was] on in April (allergy time) with NO ventil[]ation because the window doesn't open." First ARP 2, ECF No. 7-1. Harris stated he was housed on a segregation tier and was a "chronic care patient" with "asthma, allergies, chronic constipation, & anxiety, & depression." *Id.* at 1. According to Harris, his health conditions were "not compatible" with the conditions of his confinement, which therefore violated his Eighth Amendment rights. *Id.* at 1–2. As relief, he asked to be moved to a medical unit or to a different facility. *Id*.

Sergeant Schmitt dismissed Harris's First ARP for procedural reasons, explaining that an ARP may address only one issue, but the First ARP raised "medical," "housing" and

"psychology issues." Defs.' Ex. 2, at 4.[3] She instructed Harris to resubmit his grievances by April 28, 2015 as multiple ARPs, including one issue or a reasonable number of closely related issues in each ARP. *Id.*

On April 19, 2015, Harris submitted a letter to Sergeant Schmitt, which appears to be a resubmission of his First ARP. *Id.* at 6. Harris's letter stated in part:

> I find you to be both heartless & incompetently unprofessional in the performance of your duties, because you had the audacity & ignorance to ask for resubmission of the above-captioned ARP, despite it being marked & explained to be an "EMERGENCY." I want you to read- READ- & try to comprehend that there is only ONE issue!:
>
>> "My health conditions are not compatible with the cruel and unusual punishment of my housing location."

*Id*. (quotation marks and emphases in original). In response, Sergeant Schmitt sent Harris "appeal forms and copies of [his] ARP," explaining that "[i] n order to be process [sic]," Harris "need[ed] to resubmit each complaint on separate ARP forms. On the back of the appeal form has [sic] instructions on how to file." *Id.* at 8.

Harris submitted his appeal to Commissioner of Correction on May 1, 2015. ECF No. *Id.* at 9–10. In his appeal, Harris maintained that he had resubmitted his emergency ARP with the explanation that "there was only the ONE issue, and all of the other info[rmation] was in support of the ONE issue." *Id.* at 9. On May 4, 2015, the Headquarters Appeal Coordinator dismissed the appeal "for procedural reasons," namely, that he "failed to resubmit in accordance with the coordinator's instructions" and his "appeal also contains multiple issues- medical, housing, pysch." *Id*.

[3] Defendants' Exhibit 2, "Pertinent ARPS of Chester B. Harris," ECF No. 24-4, contains multiple documents. For ease of reference, I cite to all documents as "Ex. 2" and provide the page numbers generated by CM/ECF.

**B. Second ARP**

In his May 19, 2015 emergency ARP ("Second ARP"), Harris asked to be transferred to another facility or loaned a fan from the prison property department in light of his medical issues. Ex. 2, at 23. He asserted that his "asthma & allergies are triggered by extreme temperatures (i.e. heat)," and his anxiety, depression and adjustment disorder were affected as well. *Id*. He alleged that he knew that "a loaner-fan" was "available per a reliable confidential source." *Id*. at 24.

Lieutenant Adrian Boyd, who was assigned to investigate the ARP, interviewed Harris and Health Service Administrator Steele as part of her inquiry. Steele said that she "recommend[ed] that all inmates have a fan, if applicable," and noted that the medical department does not provide fans for inmates. *Id.* at 26. Lieutenant Boyd's investigation found that MCI-J "does not have a policy which loans personal appliances to the inmates" and was "not responsible for appliances for inmates['] personal use." *Id.* at 27. Lieutenant Boyd noted that "Harris was given the option to purchase a fan," and she recommended dismissing the ARP. *Id*.

In her Declaration, Lieutenant Boyd, who was formerly the property officer at MCI-J, attested to having "no personal knowledge of any inmate being loaned a fan by the institution or medical department for any reason, including a medical need. Even if an inmate has a medical order requiring him to use a fan, the inmate must still order and pay for the fan through commissary." Lt. Boyd Decl. ¶ 5. ECF No. 24-5. Lieutenant Boyd further stated that as MCI-J property officer, she "was not involved in verifying any medical condition involving Mr. Harris." *Id*. ¶ 3. She stated that, "[t]o the best of [her] personal recollection, [she] was not notified by the medical department that Mr. Harris' medical condition required him to use a fan," *id.*, and she "did not advise the . . . Warden that Mr. Harris required a fan for his cell," *id.* ¶ 4. She attested

that Harris "did not have a medical order requiring him to have access to a fan." *Id.* Lieutenant Boyd "agreed to allow Mr. Harris to order a fan from the commissary" because it was humid in the prison, even though "inmates on disciplinary segregation are not permitted to have fans in their cells," but Harris declined. *Id.*

On June 9, 2015, the Warden dismissed the Second ARP, stating that "[t]he institution is not responsible for [providing] appliance[s] for inmate's personal use," there is no institutional policy for "loan[ing] personal appliances to inmates," and Harris was "given the option to purchase a fan," but he declined. Ex. 2, at 23.

On June 18, 2015, Harris appealed the dismissal to the Commissioner of Correction, claiming that the medical department told Lieutenant Boyd that Harris "NEED[ed] a fan." *Id.* at 28. Harris indicated he was unable to afford a fan, and he asked to be transferred. *Id.* On June 25, 2015, the Warden's designee dismissed the appeal. The dismissal read:

> Your appeal has been investigated and is hereby dismissed. The Warden fully addressed your complaint. According to a Health Service Administrator, there is nothing in your chart stating that you require a fan for your medical condition which is Asthma. You may purchase a fan at your own expense. No further action is warranted through the ARP process.

*Id.* at 30.

On July 15, 2015, medical providers evaluated Harris in response to his request for a fan and issued an order to permit Harris "to use his 'fan' for medical reasons." Pertinent Med. Recs. 2, ECF No. 24-6 (quotations in original).

**C. Third ARP**

On June 2, 2015, Harris filed a new ARP ("Third ARP"), complaining that "Sergeant Schmitt [was] incompetent" and "inappropriately handl[ed]" his prior ARPs and was "deficient in her duties" as ARP Coordinator. Ex. 2, at 11. Nichole Daughtery, a Correctional Case

Management Supervisor, investigated the ARP. *Id.* at 13–14. Daughtery's investigation included interviewing Harris on June 8, 2015, and reviewing four previous ARPs he had filed at MCI-J. *Id.* at 13. Her investigation "found no evidence to substantiate [Harris's] claim," and the investigation report reads in part:

> Although you have submitted multiple ARPs as emergency requests, those complaints were all either dismissed under procedural errors or investigated and dismissed because there [sic] were found to have no merit. The ARPs dismissed for procedural reasons were both dismissed in accordance with Department Directive Number OPS.1850002. At the time they were dismissed, you were also given the proper protocol for submitting those ARPs. As such, no further action is warranted.

*Id.* at 14. On that basis, the Warden denied Harris's request, and Harris appealed to the Commissioner of Correction on July 17, 2015. *Id.* at 11, 18. The Commissioner denied the appeal on August 11, 2015. *Id.* at 19.

**D. Harris' Inmate Grievance Office ("IGO") Submissions**

Harris submitted two grievances to the IGO relevant to this case. He filed his first IGO grievance ("First IGO") "on May 12, 2015, as a grievance complaint originally pursued by inmate Harris through the Division of Correction's ('DOC's') Administrative Remedy Procedure" in his First ARP, in which he "complained of the conditions of his confinement and a failure to address his medical needs following his transfer to MCIJ on April 3, 2015." IGO Deputy Director Robin Woolford Decl. ¶ 3(a), ECF No. 24-7. The IGO Deputy Director stated that "[t]his grievance was administratively dismissed by the IGO on August 12, 2015 as essentially being the same complaint that is pending before the court." *Id.*

Harris filed his second IGO grievance ("Second IGO") "on July 7, 2015, as a grievance complaint originally pursued by inmate Harris through the DOC's ARP process" in his Second ARP, in which he "complained of a failure by MCI-J staff to provide him with a 'loaner fan' for

his 'medical issues.'" *Id.* ¶ 3(b).

> This grievance was administratively dismissed by the IGO on July 21, 2015, for inmate Harris' failure to state a claim upon which administrative relief could and should be granted, on the basis of Inmate Harris' failure to allege, or to substantiate with appropriate documentation, that he had a medical need for a "loaner fan" as evidenced by a medical order requiring that he be provided with the same. There is no indication in the file of any subsequent Maryland Circuit Court proceeding for judicial review of this final administrative decision.

*Id.*

## **Analysis**

Defendants argue that they are entitled to dismissal or summary judgment in their favor on several grounds: 1) the Complaint fails to state a claim upon which relief can be granted; 2) there is no genuine dispute as to any material fact; 3) the action is barred by qualified immunity; and 4) the claims are barred for lack of exhaustion. I must first consider Defendants' affirmative defense that Harris failed to exhaust his administrative remedies prior to filing suit.

Inmates are required to exhaust "such administrative remedies as are available" before filing an action. 42 U.S.C. § 1997e(a);[4] *see Ross v. Blake*, --- U.S. ----, 136 S. Ct. 1850, 1852 (2016) (An inmate "must exhaust available remedies, but need not exhaust unavailable ones."). This requirement is one of "proper exhaustion." *Woodford v. Ngo*, 548 U.S. 81, 93 (2006). "[A]n administrative remedy is not considered to have been available if a prisoner, through no fault of his own, was prevented from availing himself of it." *Moore v. Bennette*, 517 F.3d 717, 725 (4th Cir. 2008).

Exhaustion is mandatory. *Ross*, 136 S. Ct. at 1856-58; *Jones v. Bock*, 549 U.S. 199, 219 (2007). The purpose of exhaustion is to: 1) allow a prison to address complaints about the

---

[4] This statute is called the Prison Litigation Reform Act ("PLRA"). It provides that "[n]o action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted."

program it administers before being subjected to suit; 2) reduce litigation to the extent complaints are satisfactorily resolved; and 3) prepare a useful record in the event of litigation. *Jones*, 549 U.S. at 219. An inmate's failure to exhaust administrative remedies is an affirmative defense; defendants bear the burden of proving that plaintiff had remedies available to him of which he failed to take advantage. *Id.* at 211–12, 216.

The Fourth Circuit has addressed the meaning of "available" remedies:

> [A]n administrative remedy is not considered to have been available if a prisoner, through no fault of his own, was prevented from availing himself of it. *See Aquilar-Avellaveda v. Terrell*, 478 F. 3d 1223, 1225 (10th Cir. 2007); *Kaba v. Stepp*, 458 F. 3d 678, 684 (7th Cir. 2006). Conversely, a prisoner does not exhaust all available remedies simply by failing to follow the required steps so that remedies that once were available to him no longer are. *See Woodford v. Ngo*, 548 U.S. 81, 89 (2006). Rather, to be entitled to bring suit in federal court, a prisoner must have utilized all available remedies "in accordance with the applicable procedural rules," so that prison officials have been given an opportunity to address the claims administratively. *Id*. at 87. Having done that, a prisoner has exhausted his available remedies, even if prison employees do not respond. *See Dole v. Chandler*, 438 F.3d 804, 809 (7th Cir. 2006).

*Moore*, 517 F.3d at 725.

Further, in *Ross v. Blake*, the Supreme Court identified three circumstances in which an administrative remedy is unavailable. First, an administrative procedure is unavailable when, despite what regulations or guidance materials may promise, it operates as a simple dead end—with officers unable or consistently unwilling to provide any relief to aggrieved inmates. 136 S. Ct. at 1859. Second, "an administrative scheme might be so opaque that it becomes, practically speaking, incapable of use. In this situation, some mechanism exists to provide relief, but no ordinary prisoner can discern or navigate it." *Id*. The third circumstance arises when "prison administrators thwart inmates from taking advantage of a grievance process through machination, misrepresentation, or intimidation." *Id*. at 1860.

In Maryland, filing a request for administrative remedy with the Warden of the prison in

which one is incarcerated is the first of three steps in the ARP process that the Division of Correction provides to its prisoners. "If his request is denied, the prisoner has ten calendar days to file an appeal with the Commissioner of Correction. If this appeal is denied, the prisoner then has thirty days in which to file an appeal to the Executive Director of the IGO." *Brightwell v. Hershberger*, No. DKC-11-3278, 2016 WL 4537766, at *7 (D. Md. Aug. 31, 2016) (citing Md. Code Ann., Corr. Serv. §§ 10–206, 10–210; Md. Code Regs. § 12.07.01.03). A prisoner's claims are not exhausted until he has not only appealed to the extent the agency permits but also received a final denial of his claims on the merits at the agency's appellate level. *See Woodford v. Ngo*, 548 U.S. 81, 90 (2006) ("Administrative law . . . require[es] proper exhaustion of administrative remedies, which 'means using all steps that the agency holds out, and doing so *properly* (so that the agency addresses the issues on the merits).'" (citation omitted) (emphasis in original)).

Harris filed this federal action on May 8, 2015, before exhausting his claims before the Inmate Grievance Office. Harris filed his First IGO on May 12, 2015, as an appeal from the dismissal of his First ARP. ECF No. 24-7. The grievance was dismissed on August 12, 2015 "as essentially being the same complaint that is pending before the court." *Id*. Similarly, Harris filed his Second IGO on July 7, 2015, after he filed this suit. This grievance was dismissed on July 21, 2015 for failure to state a claim. Woolford Decl. ¶ 3(b). Thus, the IGO never reached the merits of either claim, such that they were not exhausted. *See Woodford*, 548 U.S. at 90. Further, "[e]xhaustion is a precondition to filing suit, and exhausting administrative remedies after a complaint is filed will not prevent a case from being dismissed for failure to exhaust." *Brightwell v. Hershberger*, No. DKC-11-3278, 2016 WL 4537766, at *6 (D. Md. Aug. 31, 2016) (citing *Kitchen v. Ickes*, 116 F. Supp. 3d 613, 624-25 (D. Md. 2015)). Thus, even considering

that Harris supplemented his Complaint on June 12, 2015 and July 9, 2015, the claims were not exhausted because a final order had not issued in either administrative appeal as of those dates. *See Woodford*, 548 U.S. at 90.

Harris does not address Defendants' affirmative defense in his opposition. Harris does not contend he was hindered from accessing the ARP process or that it otherwise was unavailable to him. Nor does he refute that he failed to follow administrative remedy procedure by filing the IGO grievances related to his federal claims after he filed suit in federal court. The record shows Harris's ARPs were reviewed, investigated, and he was informed of the outcome. Harris's ARP filings, appeals, and IGO grievances demonstrate his understanding of the process. His disagreement about the number of claims he presented in each ARP or the availability of a loaner fan fail to demonstrate unavailability or futility of the process. Harris does not allege, nor does the record suggest, that Defendants or others acted to thwart his access to the process.

It is clear that the state was not afforded a full opportunity to address Harris's complaints before he filed his federal lawsuit. *See Jones*, 549 U.S. at 219; *Woodford*, 548 U.S. at 90. Viewing matters in the light most favorable to Harris, there is no genuine dispute of material fact that his claims are unexhausted. Accordingly, I conclude that Harris failed to exhaust his administrative remedies and Defendants are entitled to judgment in their favor as a matter of law.

This case is subject to dismissal on the basis of failure to exhaust administrative remedies alone. Even if the claims were deemed exhausted, however, Defendants' largely unopposed submissions provide sufficient evidence that there was no constitutional violation given the matters alleged. In order to establish the imposition of cruel and unusual punishment prescribed by the Eighth Amendment, a prisoner must prove two elements—that "the deprivation of [a] basic human need was objectively 'sufficiently serious,'" and that "subjectively 'the officials

act[ed] with a sufficiently culpable state of mind.'" *Shakka v. Smith*, 71 F.3d 162, 166 (4th Cir. 1995) (emphasis in original) (citation omitted).

Harris did not provide any evidence of the impact of his cell conditions on his physical or mental health. His conclusory and self-reported accounts of the impact of cell conditions on his asthma and emotional state were considered by prison officials. Their actions do not show deliberate indifference. There was no medical order that he be allowed a fan or transfer to a different cell, and he was permitted to obtain a fan at his own expense through the commissary. Contrary to Harris's assertion, there was no program for loaning fans at MCI-J, and his summary reference to a fan allegedly provided on loan to another inmate is unverified. Defendants' unopposed and verified submissions provide ample evidence that there was no constitutional abridgement. Harris' complaints concerning the cleanliness and ventilation of his cell and Defendants' failure to provide him with a loaner fan do not amount to claims of constitutional significance. *See Strickler v. Waters*, 989 F.2d 1375, 1381 (4th Cir. 1993) (concluding that allegation of "inadequate ventilation . . . could rise to the level of [a] constitutional violation[]" if it "produced [a] serious deprivation[] of identifiable human needs" but failed because the prisoner "c[a]me forward with no evidence that he ha[d] sustained any serious or significant physical or emotional injury as a result of th[is] condition[]"). Accordingly, even if Harris's claims were exhausted, summary judgment in favor of Defendants would be appropriate.[5]

**<u>Conclusion</u>**

Harris does not refute Defendants' assertion that he failed to properly exhaust available administrative remedies with regard to the allegations set forth in the Complaint, which do not amount to complaints of constitutional significance. Defendants are entitled to summary

---

[5] Given the dismissal of Harris's claims on other grounds, the court need not reach Defendants' qualified immunity defense.

judgment in their favor on these grounds. A separate Order follows.

Dated: September 15, 2016

____________/S/_______________
Paul W. Grimm
United States District Judge